**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

| | | |
|---|---|---|
| MICHAEL D BOWDEN, | * | |
| ADC #088956 | * | |
| | * | |
| Petitioner, | * | |
| v. | * | No. 5:18cv00268-BRW-JJV |
| | * | |
| WENDY KELLEY, Director, | * | |
| Arkansas Department of Correction, | * | |
| | * | |
| Respondent. | * | |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

## I.    BACKGROUND

Petitioner, Michael Bowden, was convicted of capital murder by a Boone County jury in 1987 and sentenced to life without the possibility of parole. (Doc. No. 7 at 1.) The Arkansas Supreme Court reversed his conviction based upon an improper police lineup procedure and remanded the case for a retrial. (*Id.*) Mr. Bowden was retried, once again convicted of capital murder, and sentenced to life without the possibility of parole. (*Id.*) His direct appeal on this second conviction was unsuccessful. *Bowden v. State*, 301 Ark. 303 (1990). Additionally, Mr. Bowden's subsequent petition for Rule 37 relief was also denied. (*Id.*) *Bowden v. State*, 1992 WL 94509 (Ark. Apr. 20, 1992). The Arkansas Supreme Court recounted the facts of the case in Mr. Bowden's first appeal as follows:

> At 1:55 a.m. on April 19, 1987, Gary Keeter, a Harrison police officer, went to the home of Johnny Hefley in response to a call that there was a disturbance there. Upon the officer's arrival, a man from across the street told him that he had "a little boy over at his home who says his mom and dad is bleeding." Upon entering Hefley's residence, Keeter saw the bleeding bodies of Johnny Hefley and Cindy Bowden, Hefley's former wife. In addition, Keeter saw a number of nine millimeter shell casings lying on the floor.

Other officers arrived on the scene a few minutes later. According to Officer Glen Redding, the police were able to make the following factual observations at this point: (1) the victims were shot to death; (2) neither victim appeared to be armed; (3) there was no forced entry into the residence; (4) in light of the location of the bodies (Hefley's was slumped over in a chair; Bowden's was on the floor beside Hefley's), what they were wearing, and the fact that there were no signs of forced entry, Hefley and Bowden apparently knew their murderer.

Upon being advised that Hefley's and Bowden's five-year-old son, John David Hefley, was across the street at a neighbor's residence, Officer David Cone spoke with him. John David told the officer that he had been in his bedroom and heard what he thought was a fight between his mother and father and that he got out of bed, walked into the living room, and found his mother and dad lying on the floor. The officer then asked him if anyone else had been there that night. John David replied, "Michael Bowden from Texas."

Officers at the scene also talked with Michael James, who lived two houses down from the Hefleys' home. According to James, as he was driving up to his house earlier that night around 1:30 a.m., he noticed a late 70's dark blue Ford pickup truck parked on the street in front of the Hefleys' home. A few minutes later, while he was at his home, James heard a loud metallic banging noise and a female voice "trying to get them to stop." In all, he heard seven or eight of these noises. Immediately thereafter, he heard a car door slam and gravel spin out from under the tires. He then looked out of his window and saw the pickup which had been parked in front of the Hefleys' residence leaving the scene rapidly. As the truck turned the corner, he heard something sliding across its bed.

After learning that Michael Bowden had been in the house that night, the police immediately attempted to gain information about him. Relatives of Cindy Bowden informed the police that Michael Bowden was Cindy Bowden's husband and that two weeks prior to the murders, she had left him in Waxahachie, Texas, where they were living, and returned to Harrison to live with her former husband, Johnny Hefley.

Carl Bowden, Michael's brother, informed the police that Michael was driving Carl's tan or cream-colored 1979 Ford pickup truck and that the bed of the truck contained plastic milk crates.

Christine Franz, Michael and Cindy Bowden's daughter, informed police that Michael had contacted her twice on April 18, 1987, in an attempt to contact Cindy Bowden. In addition, the police talked to Cindy's mother, who told them that Cindy was afraid of Michael because he had recently found out that Cindy was living with Johnny Hefley.

At 9:00 a.m. on April 19, Rondall Campbell told police that seven days prior to the murders, while he was at Hefley's residence, Cindy Bowden had a telephone

3

conversation with Michael Bowden's sister, Kathleen Bowden Harless. According to Campbell, Harless told Cindy that Michael was suicidal. In addition, he told police that Cindy informed him that she believed Harless had made threatening calls to her the day before.

In talking with the Waxahachie, Texas, police, the Harrison police learned that Michael Bowden previously had been convicted of a homicide that involved the breakup of a marriage.

On April 19, 1987, the Waxahachie police issued a warrant for Michael Bowden's arrest, and at approximately 1:30 p.m., they arrested him at Carl Bowden's home in Waxahachie.

*Bowden v. State*, 297 Ark. 160, 165–67 (1988).

On May 14, 1992, Mr. Bowden filed a petition for writ habeas corpus in this Court challenging jury instructions and asserting a claim of ineffective assistance of counsel.[1] (Doc. No. 7 at 1.) His petition was denied on December 28, 1992 and his subsequent appeal to the United States Court of Appeals for the Eighth Circuit was unsuccessful. (*Id*. at 2.) Mr. Bowden returned to state court in July of 2005, filing a petition for writ of habeas corpus pursuant to Arkansas Code Annotated § 16-112-201 ("Act 1780") for further DNA testing. (Doc. No. 1 at 2.) On July 2, 2014, the Boone County Circuit Court denied relief. (Doc. No. 1 at 311-315.) Mr. Bowden subsequently filed a Motion for Reconsideration the next day, which he admits is still pending. (Doc. No. 1 at 141.)

On October 22, 2018, Mr. Bowden filed a 142-page petition for writ of habeas corpus in this Court, arguing the state violated his due process when evaluating his Act 1780 petition. He also alleges actual innocence. (*Id*. at 81.) After careful consideration of the Petition, Response, and Reply, for the following reasons, I recommend the Petition be dismissed.

---

[1]Because Bowden's current Due Process claim challenges a DNA testing statute that was not made into law until after his first petition for a writ of habeas corpus, the petition now before me is not considered successive. *Pennington v. Norris,* 257 F.3d 857, 858 (8th Cir. 2001); *Crouch v. Norris,* 251 F.3d 720, 723–725 (8th Cir. 2001).

**II.    ANALYSIS**

**A.  Time Bar**

From the outset, Mr. Bowden's Petition (Doc. No. 1) is untimely based upon the one-year

period of limitation imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA).

Title 28 U.S.C. § 2241 (d)(1) and (2) impose a one-year period of limitation on petitions for writ

of habeas corpus:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed,
> if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized
> by the Supreme Court, if the right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented
> could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

The one-year limitations period began to run on the "date on which the factual predicate of

the claim or claims presented could have been discovered through the exercise of due diligence."

28 U.S.C. § 2244(d)(1)(D).  For Mr. Bowden, time began to run on August 13, 2001 – the date

Act 1780 was enacted and became effective law.  Ark. Code Ann. §16-112-201 (Supp. 2001).   By

his own admission, Mr. Bowden originally filed his state petition for writ of habeas corpus in July

of 2005, more than three years after this law was enacted. (Doc. No. 1 at 147.)  He makes no argument for equitable tolling besides actual innocence.  While I am sympathetic to Mr. Bowden's claims that the state court did not respond to him in a timely manner, his own petition unfortunately rests on a similar faulty foundation.  When he filed the Act 1780 petition with the state court in 2005, he was already out of time. Therefore, I find the Petition is time-barred and should be dismissed.

Furthermore, the Petition is completely meritless.  Petitioner argues, at great length, the state mishandled his petition pursuant to Act 1780 by not issuing timely rulings and failing to respond on many occasions. (Doc. No. 1 at 2).  Respondent argues that this claim in Mr. Bowden's Petition is not a cognizable habeas claim, in addition to being procedurally defaulted. (Doc. No. 7 at 3-4.)  After reviewing the record, I agree with Respondent.  For a claim to be granted habeas review, it must "refer[] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue[.]" *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir.), *cert. denied*, 562 U.S. 1068 (2007). Here, Mr. Bowden fails to state any constitutional ground for this claim.  By its nature, a petition for writ of habeas corpus is meant to challenge the validity of a conviction or the length of detention. *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996).  At the core of his first claim, Mr. Bowden is simply challenging the manner in which his postconviction Act 1780 petition was handled by the state and is therefore not appropriate for federal habeas relief.

### B.    Actual Innocence

Mr. Bowden also claims he is actually innocent of his underlying conviction and, in some cases, a claim of actual innocence may be reviewable by federal courts.  Petitioner argues that postconviction testing performed by the Arkansas Crime Lab exonerated him and amounts to a

miscarriage of justice.  (Doc. No. 10 at 3.)  But as Respondent correctly asserts, a freestanding claim of actual innocence, like the one Mr. Bowden raises, is simply not cognizable.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993).

A claim of actual innocence acts "as a gateway to adjudication of a federal habeas petition on the merits." *McQuiggin v. Perkins*, 569 U.S. 383, 390 (2013).  However, to establish a claim of actual innocence, the petitioner must show factual innocence, not simply legal insufficiency of the evidence to support a conviction.  *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).  Furthermore, Mr. Bowden must establish: (1) *new* and *reliable* evidence that was not presented to the state courts, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him.  *See Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (emphasis added).  Evidence is "new" if it was not available at the time of trial through the exercise of due diligence.  *Nooner v. Hobbs,* F.3d 921, 934 (8th Cir. 2012).  Additionally, few petitioners are "within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup* 513 U.S. at 315.  "[T]he miscarriage of justice exception requires prisoners to present 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.'" *Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010) (quoting *Schlup* at 316).

In Mr. Bowden's claim of actual innocence, he incorrectly asserts "probable innocence" as the standard needed to grant habeas relief.  (Doc. No. 10 at 6.)  Additionally, Petitioner does not assert any *new* evidence for evaluation in the context of actual innocence.  He argues "[w]ith only the victim's DNA found at the crime scene, and the absence of Petitioner's DNA, he was thus excluded." (Doc. No. 10 at 4.)  While Mr. Bowden is correct in stating the postconviction DNA testing did not affirmatively match him to any of the evidence collected from the crime scene, the

testing did not completely exclude him either.  (Doc. No. 1 at 367-368.)  This is not new and reliable evidence as required by *Bowersox*.  And as so aptly put by the Superior Court of Pennsylvania, "[i]n DNA as in other areas, an absence of evidence is not evidence of absence." *Com. v. Heilman*, 2005 PA Super 867 A.2d 542, 547 (2005).

Unfortunately for Mr. Bowden, even if the DNA testing had excluded him, this was not the seminal basis for conviction.  In its original 2014 order denying habeas relief, the Boone County Circuit Court stated that after studying the trial transcript, the court found that "Michael D. Bowden was convicted beyond a reasonable doubt on the basis of eyewitness testimony, unaffected by DNA issues, and alibi-destruction evidence that was likewise unaffected by DNA issues."  (Doc. No. 1 at 312.)  Simply put, jurors still found the testimony at trial compelling enough to convict Mr. Bowden, despite a lack of DNA evidence at the crime scene.  Accordingly, his Petition for Writ of Habeas Corpus should be dismissed.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability:  "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted."  *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863

(8th Cir. 2006).

In this case, the Petition is time-barred.  Therefore, no certificate of appealability should be issued.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 1) be DISMISSED and the requested relief be DENIED.

2.    A certificate of appealability should not be issued.

DATED this 24th day of April 2019.


JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE